JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
¶138 I concur with the majority’s conclusion that when Caraway and Ames entered Russell Dorwart’s residence without a warrant and without permission, they violated his right to be free from unreasonable searches and seizures, which is guaranteed by both the Fourth Amendment to the Federal Constitution, and Article II, Section 11, of the Montana Constitution. I also concur with the majority’s conclusion that Montana’s post-judgment execution statutes deny procedural due process in violation of the Fourteenth Amendment to the Federal Constitution, and Article II, Section 17, of the Montana Constitution, and that implementation of those procedural protections described by the majority is necessary to meet due process requirements.
¶139 However, I dissent from those parts of the majority opinion which conclude that Ames and Caraway were entitled to qualified immunity, that the § 1983 claim against Brophy and Stillwater County was properly dismissed, and that the plaintiffs’ claims for trespass and conversion were properly dismissed.
¶ 140 The maj ority opinion begins with a cogent explanation of why Dorwart’s right to be free from unreasonable searches and seizures *250 was clearly violated, and then repudiates its own analysis in an effort to support its conclusion that in spite of the violation of Dorwart’s constitutional rights, those who violated them have qualified immunity because the rights are not as evident as originally stated.
¶141 For example, the majority correctly points out that both the Fourth Amendment to the United States Constitution, and Article II, Section 11, of the Montana Constitution, guarantee to all people the right to be secure in their homes against unreasonable searches and seizures, as well as the fact that we have repeatedly held for years that entry into a person’s home without a warrant is per se unreasonable, with a few exceptions that are inapplicable here.
¶142 The majority also correctly points out that neither the writs which were issued in this case, nor the post-judgment execution statutes pursuant to which the writs were issued, authorize entry into a person’s home for the purpose of executing on property in satisfaction of the creditor’s judgment.
¶143 Finally, the majority correctly points out that search and seizure protections apply in the civil context, as well as the criminal context, that that principle has been clear since 1967, and that all of the authorities relied on by the defendants and the State of Montana are distinguishable by their facts.
¶144 In spite of all of these clearly correct conclusions, the majority then holds that
Camara and G.M. Leasing, while providing guidance in addressing the scope of warrantless administrative searches and seizures, did not directly address actions taken pursuant to a writ of execution. Indeed, in neither case did there appear to be any type of judicial authorization for entry into the complainant’s premises.
What difference did it make if Camara and G.M. Leasing specifically dealt with writs of execution? They dealt with the issue of warrantless searches in a civil context and held that the Constitution was violated when there was no judicial authorization for the search. The writs in this case were no different because, as pointed out in another part of the majority opinion, they did not authorize the defendants to search Dorwart’s home.
¶145 With the majority’s decision, the exception of qualified immunity has now completely swallowed the rule of liability for violating another person’s civil rights in Montana. If the right to be free from unreasonable searches and seizures, based on the Fourth Amend *251 ment to the United States Constitution, and Article II, Section 11, of the Montana Constitution, is not a clear right, then nothing is.
¶146 Because the obligation of state agents to stay out of people’s homes without a warrant is so clearly set forth in the Federal and State Constitutions, it was incumbent upon the State to show some clear decision, statute, or other colorable authority which would have allowed entry into the plaintiff’s home in spite of that constitutional right on the date in question. None has been offered, and the majority cites none. In fact, as previously mentioned, the majority has done a capable job of distinguishing those authorities which have been cited by the defendants and the State.
¶147 The majority has imposed an impossible burden on the plaintiffs, which is to establish that some isolated decision or encyclopedic text could not be construed by those who wish to violate a person’s rights in support of their conduct. In other words, the plaintiffs have to prove a negative in order to establish that they had a right which the majority initially concedes is clearly established.
¶ 148 I also dissent from the majority’s conclusion that Brophy, in his capacity as Sheriff, and Stillwater County were entitled to summary judgment dismissing Dorwart’s § 1983 claim against them. A local governmental entity and a supervisor of persons acting under color of state law are liable, as noted by the majority, for violations of constitutional rights when the violation results from that governmental entity’s or that supervisor’s policy. In this case, in response to written interrogatories, each defendant answered that the actions complained of (i.e., the illegal search of Dorwart’s home and seizure of property found therein) were “the usual and customary manner of performing a seizure on a writ of execution in the County of Stillwater, Montana.” In other words, it was the County’s policy, as implemented by Brophy, the supervisor for Ames and Caraway, to apply writs of execution as search warrants, in spite of the fact that no statute authorized their use for that purpose and the plain language on the face of the writ included no such authorization. I would conclude that this practice and policy of Brophy and Stillwater County constituted “deliberate indifference” to Dorwarts’ constitutional rights. The majority’s decision to affirm the dismissal of Brophy and Stillwater County is based on the same unsound conclusion on which its qualified immunity decision is based — i.e., that Dorwart had no clearly established right prior to this case to be free from warrantless entry into and search of his home. I believe that conclusion is incorrect, as applied to Brophy and *252 Stillwater County, for the same reasons it was incorrect when used to justify the majority’s qualified immunity conclusion.
¶149 I also dissent from the majority’s conclusion that Dorwarts’ claims for trespass and conversion were properly dismissed because the officers who entered the home without permission and without a warrant acted on the basis of a good faith understanding of the law. The majority position might have some merit if the writs, on their face, authorized entry into Dorwart’s home for the purpose of their execution, or if the statutes pursuant to which the writs were issued authorized entry. However, neither is true. Furthermore, to suggest the ninety-six-year-old Ramsey decision, which did not even discuss the Fourth Amendment, provided cover for the illegal entry into Dorwart’s home, in spite of subsequent U.S. Supreme Court decisions which clearly require a warrant, is the type of argument we would normally consider specious if made by a litigant appearing before this Court.
¶150 For all the same reasons set forth previously, I also dissent from the majority’s denial of Dorwart’s claim for attorney fees pursuant to 42 U.S.C. § 1988. However, it bears repeating that Dorwart’s § 1983 claim was not based on the County’s or its officers’ enforcement of state laws. There were no state laws which authorized the entry into Dorwart’s home without a warrant and without his permission. The majority acknowledged as much in the first part of its opinion. Therefore, its rationalization for denying Dorwart’s attorney fees is especially inconsistent and unsound.
¶151 In summary, I concur with the majority’s conclusions that Dorwart’s rights to be free from unreasonable searches and seizures, to privacy, and to due process were violated. I dissent from the majority’s conclusion that in spite of flagrant violations of Dorwart’s constitutional rights, no one is accountable pursuant to 42 U.S.C. § 1983 because cover can be found in a nearly 100-year-old decision which had nothing to do with constitutional issues in the first place. I would reverse the District Court’s judgment which dismissed Dorwarts’ claim for damages pursuant to 42 U.S.C. § 1983 and remand for trial of Dorwarts’ claims.
JUSTICE HUNT joins in the foregoing concurring and dissenting opinion.